UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PIERRE-YVES CHICOINEAU, | 1:18-cv-03264 (JSR) |
| Plaintiff, | |
| - against – | ECF Case |
| BONNIER CORPORATION | |
| Defendant. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION FOR
PARTIAL SUMMARY JUDGMENT ON LIABILITY AGAINST DEFENDANT FOR
COPYRIGHT INFRINGEMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................... 1

UNCONTROVERTED FACTS ............................................................................................ 3

LEGAL STANDARD ........................................................................................................... 5

ARGUMENT ........................................................................................................................ 6

**POINT I:  PLAINTIFF READILY ESTABLISHES HIS INFRINGEMENT CLAIM ......... 6**

   A.  PLAINTIFF OWNS A VALID COPYRIGHT .................................................................. 6

   B.  DEFENDANT COPIED PLAINTIFF'S WORK WITHOUT AUTHORIZATION .................................. 7

**POINT II:  THE PUBLIC DOMAIN DEFENSE FAILS BECAUSE PLAINTIFF'S
PHOTOGRAPHIC RENDITION OF THE EIFFEL TOWER IS ORIGINAL  7**

**POINT III: THE *DE MINIMIS* USE DEFENSE FAILS AS A MATTER OF LAW
BECAUSE DEFENDANT'S QUALITATIVE COPYING WAS MATERIAL . 9**

**POINT IV: DEFENDANT HAS FAILED TO PRODUCE EVIDENCE IN SUPPORT OF
ITS DEFENSES OF LACHES, ESTOPPEL AND ACQUIESCENSE ............. 11**

   A.  THE DEFENSE OF LACHES IS INAPPLICABLE TO PLAINTIFF'S CLAIM FOR LEGAL RELIEF AND,
IN ANY EVENT, FAILS AS A MATTER OF LAW ................................................................ 11

     1.  The Defense of Laches is Inapplicable to Legal Relief ................................................. 11

     2.  Laches Fails Where the Claim is Brought Within the Limitations Period ..................... 12

   B.  THERE IS NO EVIDENCE TO SUPPORT THE ESTOPPEL DEFENSE ............................................ 12

   C.  DEFENDANT CANNOT ESTABLISH ACQUIESCENCE ............................................................. 14

**POINT V:  THE DEFENSE OF "BAD FAITH" BASED ON PRE-FILING
SETTLEMENT NEGOTIATIONS FAILS AS A MATTER OF LAW ............ 15**

**POINT VI: THE DEFENSE OF "FAILURE TO STATE A CLAIM FOR WILLFUL
INFRINGEMENT" IS NOT A DEFENSE TO LIABILITY .............................. 16**

CONCLUSION ...................................................................................................................... 17

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ............................................................................... 5

*Associated Press v. Meltwater U.S. Holdings, Inc.,*
931 F. Supp. 2d 537 (S.D.N.Y. 2013) .................................................... 13

*Basic Books, Inc. v. Kinko's Graphics Corp.,*
758 F.Supp. 1522 (S.D.N.Y.1991) .......................................................... 14

*Bridgeman Art Library, Ltd. v. Corel Corp.,*
36 F.Supp.2d 191 (S.D.N.Y.1999) ........................................................... 8

*Broadcast Music, Inc., v. R Bar of Manhattan, Inc.,*
919 F.Supp. 656 (S.D.N.Y. 1996) .......................................................... 16

*BWP Media USA, Inc. v. Gossip Cop Media, Inc.*
196 F.Supp.3d 395 (S.D.N.Y. 2016) ......................................................... 6

*Capital Records, Inc. v. MP3tunes, LLC,*
48 F.Supp.3d 703 (S.D.N.Y. 2014) ........................................................ 16

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.,*
536 F.3d 121 (2d Cir. 2008) .................................................................. 17

*Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,*
150 F.3d 132 (2d Cir. 1998) ............................................................... 6, 7

*Celotex Corp. v. Catrett,*
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ............................. 5

*DeCarlo v. Archie Comic Publ'ns, Inc.,*
127 F.Supp.2d 497 (S.D.N.Y.2001) ....................................................... 13

*DiCola v. SwissRe Holding (North America), Inc.,*
996 F.2d 30 (2d Cir. 1993) ..................................................................... 5

*Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.,*
307 F.3d 197 (3d Cir. 2002) .................................................................. 10

*EMI Christian Music Group, Inc. v. MP3tunes, LLC,*
844 F.3d 79 (2d Cir. 2016) ................................................................... 17

## CASES *(continued…)*

*Entral Group Int'l LLC v. Honey Cafe on 5th, Inc.,*
2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006) ............................................................. 16

*F.W. Woolworth Co. v. Contemporary Arts,*
193 F.2d 162 (1st Cir.1951) ...................................................................................................... 9

*Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,*
499 U.S. 340 (1991) ............................................................................................................ 6, 8

*Feltner v. Columbia Pictures Television, Inc.,*
523 U.S. 340, 352 (1998) ........................................................................................................ 16

*Fitzgerald Publ'g. Co. v. Baylor Publ'g Co.,*
807 F.2d 1110 (2d Cir.1986) .................................................................................................... 17

*Gidatex, S.r.L. v. Campaniello Imports, Ltd.,*
82 F.Supp.2d 126 (S.D.N.Y. 1999) .......................................................................................... 15

*Island Software & Computer Serv., Inc. v. Microsoft Corp.,*
413 F.3d 257 (2d Cir. 2005) ...................................................................................................... 6

*Keane Dealer Serv., Inc. v. Harts,*
968 F.Supp. 944 (S.D.N.Y. 1997) ............................................................................................ 13

*Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,*
519 F.Supp. 730 (S.D.N.Y.1981) ............................................................................................. 16

*Lipton v. Nature Co.,*
71 F.3d 464 (2d Cir. 1995) ........................................................................................................ 6

*Mannion v. Coors Brewing Co.,*
377 F.Supp.2d 444 (S.D.N.Y. 2005) .......................................................................................... 8

*Marvel Characters, Inc. v. Simon,*
310 F.3d 280 (2d Cir.2002) ...................................................................................................... 13

*MBIA Ins. Corp. v. Patriarch Partners VIII, LLC,*
842 F.Supp.2d 682 (S.D.N.Y. 2012) ........................................................................................ 15

*Petrella v. Metro-Goldwyn-Mayer, Inc.,*
572 U.S. __, 134 S.Ct. 1962 (May 19, 2014) ......................................................................... 11

## CASES *(continued…)*

*Psihoyos v. John Wiley & Sons, Inc.*,
  748 F.3d 120 (2d Cir. 2014).................................................................................. 12

*Psihoyos v. Pearson Educ., Inc.*,
  855 F. Supp. 2d 103 (S.D.N.Y. 2012) ................................................................... 13

*Republic of Ecuador v. Chevron Corp.*,
  638 F.3d 384 (2d Cir. 2011)................................................................................... 13

*Ringgold v. Black Entertainment Television, Inc.*,
  126 F.3d 70 (2d Cir. 1997)..................................................................................... 10

*Rogers v. Koons*,
  960 F.2d 301 (2d Cir. 1992)..................................................................................... 6

*Scholz Design, Inc. v. Sard Custom Homes, LLC*,
  691 F.3d 182 (2d Cir. 2012)..................................................................................... 6

*SEC v. Meltzer*,
  440 F. Supp. 2d 179 (E.D.N.Y. 2006) ..................................................................... 5

*SimplexGrinnell LP v. Integrated Sys. & Power, Inc.*,
  642 F.Supp.2d 167 (S.D.N.Y.2009)....................................................................... 13

*Solid Oak Sketches, LLC v. 2K Games, Inc.*,
  No. 16-CV-724-LTS-SDA, 2018 WL 1626145, at *3 (S.D.N.Y. Mar. 30, 2018) .................. 10

*Stevens v. Aeonian Press, Inc.*,
  No. 00 Civ. 6330(JSM), 2002 WL 31387224 at *1 (S.D.N.Y. Oct. 23, 2002) ....................... 16

*Tolliver v. McCants*,
  684 F. Supp. 2d 343, 347 (S.D.N.Y. 2010), *aff'd*, 486 F. App'x 902 (2d Cir. 2012)............... 14

*United States v. Mack*,
  295 U.S. 480, 489, 55 S.Ct. 813, 79 L.Ed. 1559 (1935)......................................... 11

*Yurman Studio v. Castaneda*,
  591 F.Supp.2d 471 (S.D.N.Y. 2008).......................................................................... 8

## STATUTES

17 U.S.C. § 410(c) .................................................................................................... 6
17 U.S.C. § 507(b) .................................................................................................. 12

## RULES

Fed. R. Civ. P. 56 ................................................................................................................. 5

## TREATISES

1 NIMMER § 2.08[E][1], At 2-129 ....................................................................................... 8

1 NIMMER §§ 2.01[A], [B] (1990) ....................................................................................... 8

4 NIMMER ON COPYRIGHT § 13.07 .................................................................................. 14

Plaintiff Pierre-Yves Chicoineau ("Plaintiff" or "Chicoineau") respectfully submits this memorandum of law in support of his motion for summary judgment on liability for copyright infringement against Defendant Bonnier Corporation  ("Defendant" or "Bonnier").

## PRELIMINARY STATEMENT

This is an infringement action involving a media company's unauthorized use of a copyrighted photograph of the Eiffel Tower in Paris, France.  Plaintiff is a professional photographer with over 15 years working in the business of licensing his work.  Defendant is a largescale publisher which expropriated Plaintiff's work without his authorization.

There is no dispute that Plaintiff owns a valid copyright to his photograph of the Eiffel Tower.  Further, Defendant readily admits that it copied Plaintiff's work for use in Defendant's travel article about Paris and did not have a license to do so.  Accordingly, the two elements of Plaintiff's infringement claim have been established.

Defendant alleges seven affirmative defenses (listed as five defenses in Defendant's Amended Answer).  These are: (1) public domain (which is a challenge to the originality of the photograph for purposes of copyright protection); (2) *de minimis* use; (3) laches, estoppel and acquiescence; (4) failure to state a claim for willful infringement; and (5) bad faith in failing to accept a licensing fee prior to filing this lawsuit.

The public domain claim fails because even though anyone can take a photograph of the Eiffel Tower, Plaintiff's photographic rendition of the Eiffel Tower is original in the sense that Plaintiff employed creativity in selecting the angle, shade, lighting, filters and effects applied to the photograph.

The *de minimis* defense fails because Defendant's use was qualitatively sufficient in the sense that it copied the entire photograph in full-scale and full-color. Further, Defendant used the photograph of the Eiffel Tower to illustrate a travel story about Paris, which means that the qualitative use was material. Defendant's use was also quantitatively sufficient because the Photograph was prominently displayed in the foreground of Defendant's infringing article and is readily observable by the ordinary viewer.

The defense of laches fails because laches is no defense to Plaintiff's claim for actual or statutory damages and, in any event, Plaintiff's claim was brought within the applicable three-year period prescribed by Section 505 of the Copyright Act, thereby precluding a laches defense as a matter of law.

The defenses of estoppel and acquiescence fail because there is no evidence that Plaintiff made any representations to Defendant after discovering the infringement. Nor is there any evidence that Defendant relied on any representations to its detriment.

The defense of failure to state a claim for willful infringement does not preclude the Court's granting of summary judgment on liability because copyright infringement is a strict liability offense. This defense is therefore only applicable to the amount of damages that can be recovered at trial.

Finally, the defense of "bad faith", which should be construed as an equitable defense of unclean hands, also fails because in a statutory damages case, Plaintiff has no legal duty to accept a pre-filing offer of settlement measured by the lost licensing fee. Courts routinely award substantial statutory damages awards to deter future infringement without regard for the actual loss of any licensing fee. In sum, the Court should GRANT Plaintiff's motion for summary judgment against Bonnier Corporation on the issue of liability for copyright infringement.

<u>**UNCONTROVERTED FACTS**</u>

<u>**Plaintiff Pierre-Yves Chicoineau**</u>

Chicoineau is a professional photographer who has been in the business of licensing his photographs for over 15 years [Plaintiff's Statement Pursuant to Local Rule 56.1 ("56.1"), ¶¶ 1-2]

<u>**Defendant Bonnier Corporation**</u>

Bonnier Corporation is a largescale, for-profit media company based in New York with over 1000 employees and reported annual revenue of $350 million.  [56.1, ¶ 3]  Bonnier owns and operates the website www.DestinationWeddingMag.com. (the "Website") [56.1, ¶ 4]

<u>**The Photograph of The Eiffel Tower– November 27, 2002**</u>

On or about November 27, 2002, Plaintiff photographed the Eiffel tower illuminated at night in Paris, France (the "Photograph").  [56.1, ¶ 5]  In composing his rendition of the Eiffel Tower, Plaintiff selected the angle of shot, light and shade, exposure, and effects achieved by means of filters.  [56.1, ¶ 5]  Plaintiff then licensed the Photograph to a third-party stock photography agency called "Big Stock Photo" which maintains a website at www.bigstockphoto.com.  [56.1, ¶ 6]

<u>**Registration of the Photograph – February 4, 2003**</u>

Plaintiff is in possession of a registration certificate for the Photograph, bearing number VAu000577335, with effective date February 4, 2003 (the "335 Registration").  [56.1, ¶ 7] Plaintiff personally deposited the Photograph with the U.S. Copyright Office as part of his application for the 335 Registration.  [56.1, ¶ 8]

<u>**Defendant's Unauthorized Publication of the Photograph – August 12, 2010**</u>

On or about August 12, 2010, Defendant published an article on the Website entitled "*Top 5 Romantic Spots to Steal a Kiss in Paris"* at the URL https://www.destinationweddingmag.com/blogs/top-5-romantic-spots-steal-kiss-paris#page-6 (the "Bonnier Article"). [56.1, ¶ 9] Defendant displayed the Photograph on the Website as part of the Bonnier Article. [56.1, ¶ 10] Commercial advertisements are visible on the face of the Bonnier Article where the Photograph is prominently displayed. [56.1, ¶ 11]

On the face of the Bonnier Article, Plaintiff was not credited as the author of the Photograph and Defendant did not seek Plaintiff's permission to publish the Photograph. [56.1, ¶¶ 12-13] Bonnier did not have a license to display the Photograph on the Website. [56.1, ¶ 14] Plaintiff never granted Defendant authorization to copy the Photograph or distribute copies of Plaintiff's registered work to the public. [56.1, ¶ 15] There was no communication between Plaintiff and Defendant before the infringement was discovered and Plaintiff never made representations to Defendant at any time thereafter. [56.1, ¶ 16] Defendant's unauthorized use of the Photograph occurred subsequent to the effective date of the 335 Registration. [56.1, ¶ 17]

**Plaintiff's Discovery of the Infringement – February 8, 2018**

It is the routine practice of Plaintiff's counsel, Liebowitz Law Firm, PLLC (the "Firm"), to search the internet on behalf of the Firm's clients to locate infringing content on-line. [56.1, ¶ 18] On or about February 1, 2018, Plaintiff became a client of the Firm. [56.1, ¶ 19] On or about February 8-9, 2018, the Firm discovered the Bonnier Article as part of the Firm's routine practice of searching for infringements on the internet and promptly notified Plaintiff of Defendant's use of the Photograph. [56.1, ¶ 20] Before the Bonnier Article was discovered by the Firm in February 2018, Plaintiff had no reason to know that Bonnier had published the Photograph without Plaintiff's authorization. [56.1, ¶ 21]

4

## LEGAL STANDARD

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The burden is on the moving party to establish the lack of any factual issues.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986).  An otherwise properly supported motion for summary judgment will not be defeated because of the mere existence of some alleged factual dispute between the parties.  *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).

Under Rule 56(e), the party opposing the motion "may not rest upon the mere allegations or denials of his pleadings, but . . . must set forth specific facts showing there is a genuine issue for trial."  *Anderson,* 477 U.S. at 248.  The district court "must also be 'mindful of the underlying standards and burdens of proof' . . . because the evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *SEC v. Meltzer,* 440 F. Supp. 2d 179, 187 (E.D.N.Y. 2006).

 "Where a plaintiff uses a summary judgment motion, in part, to challenge the legal sufficiency of an affirmative defense - on which the defendant bears the burden of proof at trial - a plaintiff may satisfy its Rule 56 burden by showing that there is an absence of evidence to support an essential element of the non-moving party's case." *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (*quoting DiCola v. SwissRe Holding (North America), Inc.*, 996 F.2d 30, 32 (2d Cir. 1993)).  It is well-settled that when a party moves for summary judgment, there is "no express or implied requirement in Rule 56 that the moving party support its motion with affidavits or other similar materials *negating* the opponent's claim." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

## ARGUMENT

On summary judgment, the Court may determine liability against a defendant on plaintiff's copyright infringement claim. *See, e.g., Lipton v. Nature Co.*, 71 F.3d 464, 471 (2d Cir. 1995); *Rogers v. Koons,* 960 F.2d 301, 307 (2d Cir. 1992).

## POINT I:  PLAINTIFF READILY ESTABLISHES HIS INFRINGEMENT CLAIM

To establish a claim of copyright infringement, plaintiff must show two elements: (1) ownership of a valid copyright; and (2) unauthorized copying of the copyrighted work. *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991); *Castle Rock Entm't, Inc. v. Carol Publ'g Group, Inc.,* 150 F.3d 132, 137 (2d Cir. 1998).

### A.   PLAINTIFF OWNS A VALID COPYRIGHT

"A certificate of registration from the U.S. Register of Copyrights constitutes *prima facie* evidence of the certificate holder's copyright ownership, as well as of the truth of the facts stated in the registration." *BWP Media USA, Inc. v. Gossip Cop Media, Inc.,* 196 F.Supp.3d 395, 401 (S.D.N.Y. 2016) (*citing* 17 U.S.C. § 410(c)).  A certificate of copyright registration is *prima facie* evidence of both valid ownership of copyright <u>and</u> originality. *Scholz Design, Inc. v. Sard Custom Homes, LLC*, 691 F.3d 182, 186 (2d Cir. 2012).  To be timely, a certificate of registration must be obtained "before or within five years after first publication" of a work. *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257 (2d Cir. 2005).

Here, Plaintiff is in possession of a certificate of registration from the USCO (the "335 Registration"). [56.1, ¶ 7]  The Photograph is on deposit with the 335 Registration.  [56.1, ¶ 8]  The 335 Registration was obtained within five years after first publication of the work. [56.1, ¶ 6]  Accordingly, the 335 Registration serves as *prima facie* evidence of Plaintiff's valid copyright ownership. *Whimsicality, Inc.*, 891 F.2d at 455.  "The validity of a registration may be

rebutted by proof of a certificate holder's fraud on the Copyright Office, though the party

seeking to establish such fraud bears a 'heavy burden.'" *BWP Media*, 196 F.Supp.3d at 401

(citation omitted); *see also Fonar Corp. v. Domenick*, 105 F.3d 99, 105 (2d Cir. 1997) (*"the*

presumption [of validity] may be overcome only by 'proof of deliberate misrepresentation.'").

Here, the record is devoid of any evidence that Plaintiff defrauded the Copyright Office

in the process of obtaining the 335 Registration. As such, there is no genuine issue of material

fact concerning the validity of the 335 registration and summary judgment should be granted on

this issue.

**B.    DEFENDANT COPIED PLAINTIFF'S WORK WITHOUT AUTHORIZATION**

To satisfy the second element of an infringement claim, a plaintiff must show both that

his work was "actually copied" and that the portion copied amounts to an "improper or unlawful

appropriation." *Castle Rock,* 150 F.3d at 137 (citations omitted).

Here, there is no factual dispute concerning whether Defendant "actually copied" the

Photograph.  First, Defendant admits that it copied the Photograph and displayed it on the

Website [56.1, ¶¶ 9-10]  Second, Defendant admits that it did not have a license to display the

Photograph on the Website. [56.1, ¶ 14]  As such, there is issue of disputed fact concerning the

second element of Plaintiff's infringement claim.

**POINT II:    THE PUBLIC DOMAIN DEFENSE FAILS BECAUSE PLAINTIFF'S
               PHOTOGRAPHIC RENDITION OF THE EIFFEL TOWER IS ORIGINAL**

Defendant's first affirmative defense alleges that "[t]he contents of the work are in the public domain."  [Amended Answer, Dkt. # 19, First Affirmative Defense].  This defense must be properly understood as a challenge to the originality of the Photograph for purposes of determining whether the work is subject to copyright protection.  *See, e.g., Yurman Studio v. Castaneda*, 591 F.Supp.2d 471, 495 (S.D.N.Y. 2008) ("Defendants argue that these designs existed in the public domain in substantially the same form prior to Yurman's registrations, and therefore they lack sufficient originality to be protected by copyright.").  In other words, Defendant argues that because the Eiffel Tower itself is in the public domain and therefore not subject to copyright protection, it necessarily follows that any photograph of the Eiffel Tower is not copyrightable.  As demonstrated below, this defense fails as a matter of law.

It is well-established that "[t]he *sine qua non* of copyright is originality." *Feist Publ'ns,* 499 U.S. at 345.  Accordingly, "copyright protection may extend only to those components of a work that are original to the author."  *Id.* at 348. "Original" in the copyright context "means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity." *Id.* at 345 (*citing* 1 NIMMER §§ 2.01[A], [B] (1990)).

"Almost any photograph 'may claim the necessary originality to support a copyright.'" *Mannion v. Coors Brewing Co.,* 377 F.Supp.2d 444, 451 (S.D.N.Y. 2005) (*citing* 1 NIMMER § 2.08[E][1], at 2-129; *Bridgeman Art Library, Ltd. v. Corel Corp.,* 36 F.Supp.2d 191, 196 (S.D.N.Y.1999)).  Originality may be found in a photograph where it "does not depend on creation of the scene or object to be photographed . . . and which resides [instead] in such specialties as angle of shot, light and shade, exposure, effects achieved by means of filters, developing techniques, etc." *Mannion,* 377 F.Supp.2d at 451 (internal quotations omitted).

"[T]o the extent a photograph is original in this way, copyright protects not what is depicted, but rather how it is depicted." *Id.*; *see also F.W. Woolworth Co. v. Contemporary Arts,* 193 F.2d 162, 164 (1st Cir.1951) ("It is the well established rule that a copyright on a work of art does not protect a subject, but only the treatment of a subject.")

Here, even though the Eiffel Tower itself may be in the public domain and free for anyone to photograph, there can be no dispute that Plaintiff's photographic rendition of the Eiffel Tower meets the minimum threshold of originality sufficient for copyright protection. *Accord Mannion*, 377 F.Supp.2d at 455 ("[t]here can be no serious dispute that the Garnett Photograph is an original work. The photograph does not result from slavishly copying another work and therefore is original in the rendition. Mannion's relatively unusual angle and distinctive lighting strengthen that aspect of the photograph's originality. His composition-posing man against sky-evidences originality in the creation of the subject"). In composing his rendition of the Eiffel Tower, Plaintiff selected the angle of shot, light and shade, exposure, and effects achieved by means of filters. [56.1, ¶ 5] As such, Defendant's challenge to the originality of the Photograph, based on a public domain defense, fails as a matter of law.

**POINT III:    THE *DE MINIMIS* USE DEFENSE FAILS AS A MATTER OF LAW BECAUSE DEFENDANT'S QUALITATIVE COPYING WAS MATERIAL**

Defendant's second affirmative defense alleges that Defendant's use of the Photograph was *"de minimis."* [Amended Answer, Dkt. # 19, Second Affirmative Defense]. As demonstrated below, this defense should be dismissed as factually groundless and legally incognizable.

When factual copying is not in dispute, the *de minimis* analysis focuses on "whether the admitted copying occurred to an extent sufficient to constitute actionable copying, i.e.,

infringement." *Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 75 (2d Cir. 1997).

The sufficiency threshold has both quantitative and qualitative components. *Solid Oak Sketches, LLC v. 2K Games, Inc.*, No. 16-CV-724-LTS-SDA, 2018 WL 1626145, at *3 (S.D.N.Y. Mar. 30, 2018). "The qualitative component concerns the copying of expression, rather than ideas, a distinction that often turns on the level of abstraction at which the works are compared" and "[t]he quantitative component generally concerns the amount of the copyrighted work that is copied, a consideration that is especially pertinent to exact copying." *Ringgold* at 75 (citation omitted).

Here, with respect to the qualitative component, Defendant concedes that it copied the Photograph in its entirety [56.1, ¶ 10] and therefore admits that the qualitative component has been satisfied. Moreover, Defendant used Plaintiff's photograph of the Eiffel Tower to illustrate the subject matter of its article, i.e. "*Top 5 Romantic Spots to Steal a Kiss in Paris*" [56.1, ¶ 9]. As such, Defendant's copying of the qualitative value of the Photograph was material to Defendant's message, thereby precluding the *de minimis* defense as a matter of law. *See Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 208 (3d Cir. 2002) ("[a] *de minimis* defense does not apply where the qualitative value of the copying is material.").

Furthermore, there can be no dispute with respect to the quantitative component which "concerns the observability of the copied work - the length of time the copied work is observable in the allegedly infringing work and such factors as focus, lighting, camera angles, and prominence." *Ringgold*, 126 F.3d at 75. A full-color, full-scale reproduction of the Photograph is readily observable on Defendant's Website and prominently displayed in the foreground. [56.1, ¶ 9]. As such, because Defendant's use satisfies both the qualitative and quantitative components, the *de minimis* defense fails as a matter of law.

**POINT IV:    DEFENDANT HAS FAILED TO PRODUCE EVIDENCE IN SUPPORT OF ITS DEFENSES OF LACHES, ESTOPPEL AND ACQUIESCENSE**

Defendant's fourth affirmative defense alleges that "Plaintiff's claim is barred, in whole or in part, by the doctrines of laches, estoppel, and/or acquiescence." [Amended Answer, Dkt. # 19, Fourth Affirmative Defense].  Defendant has failed to produce evidence to support of any of these claims.

### A.    THE DEFENSE OF LACHES IS INAPPLICABLE TO PLAINTIFF'S CLAIM FOR LEGAL RELIEF AND, IN ANY EVENT, FAILS AS A MATTER OF LAW

Defendant's laches defense fails on two separate grounds: First, the defense of laches only bars equitable relief which is not at issue here because Defendant removed the Photograph from the Website.  Second, the laches defense is inapplicable as a matter of law because Plaintiff's infringement claim was brought within the statute of limitations period prescribed by section 507(b) of the Copyright Act.

### 1.    The Defense of Laches is Inapplicable to Legal Relief

As per the Supreme Court, the equitable defense of laches does not bar a claim for legal relief.  *See Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. __, 134 S.Ct. 1962, 1974 (May 19, 2014) ("in face of a statute of limitations enacted by Congress, laches cannot be invoked to bar legal relief") (*citing United States v. Mack,* 295 U.S. 480, 489, 55 S.Ct. 813, 79 L.Ed. 1559 (1935) ("[l]aches within the term of the statute of limitations is no defense [to an action] at law")).

Here, the Complaint seeks an award of actual damages or, in the alternative, statutory damages plus his costs and attorneys' fees.  [Dkt. #1, Prayer for Relief, ¶¶ 3-4].  Conversely, Plaintiff does not seek any equitable relief.  [*Id.*]  This is particularly the case given that

Defendant has already removed the infringing content from their Website.  For this reason alone, the laches defense fails.

### 2.  Laches Fails Where the Claim is Brought Within the Limitations Period

The Copyright Act provides that "[n]o civil action shall be maintained under the [Act] unless it is commenced within three years after the claim accrued." 17 U.S.C. § 507(b). Under Second Circuit law, an infringement claim does not "accrue" until the copyright holder discovers, or with due diligence should have discovered, the infringement.  *Psihoyos v. John Wiley & Sons, Inc.*, 748 F.3d 120 (2d Cir. 2014).

Here, Plaintiff did not discover (and could not have reasonably discovered) his infringement claim until February 9, 2018 after he retained counsel to enforce his rights.  [56.1, ¶¶ 20-21]  As such, because his claim did not accrue until February 2018 and because he filed suit just several months later on April 13, 2018 [Dkt. #1], his infringement claim falls within the applicable three-year period prescribed by section 507(b) of the Copyright Act.

As per the Supreme Court, the equitable defense of laches does not bar relief on a copyright infringement claim brought within § 507(b)'s three-year limitations period. *Petrella,* 134 S.Ct. at 1963 ("Laches, we hold, cannot be invoked to preclude adjudication of a claim for damages brought within the three-year window.").  Since Plaintiff's claim falls within the purview of section 505, the defense of laches fails.

### B.    THERE IS NO EVIDENCE TO SUPPORT THE ESTOPPEL DEFENSE

To establish an estoppel defense in the copyright context, a defendant must show that: (1) plaintiff had knowledge of the defendant's infringing conduct; (2) plaintiff either (a) intended that defendant rely on plaintiff's acts or omissions suggesting authorization, or (b) acted or failed to act in such a manner that defendant had a right to believe it was intended to rely on plaintiff's

conduct; (3) defendant was ignorant of the true facts; and (4) defendant relied on plaintiff's conduct to its detriment. *SimplexGrinnell LP v. Integrated Sys. & Power, Inc.,* 642 F.Supp.2d 167, 194 (S.D.N.Y.2009) (quoting *DeCarlo v. Archie Comic Publ'ns, Inc.,* 127 F.Supp.2d 497, 509 (S.D.N.Y.2001)) (brackets omitted).

Courts warn that "[e]stoppel is a drastic remedy and must be utilized sparingly. Clearly, a successful application of this remedy requires the party asserting estoppel to use due care and not fail to inquire as to its rights where that would be the prudent course of conduct." *Keane Dealer Serv., Inc. v. Harts,* 968 F.Supp. 944, 948 (S.D.N.Y. 1997); *Psihoyos v. Pearson Educ., Inc.*, 855 F. Supp. 2d at 129. In fact, estoppel applies "where the enforcement of the rights of one party would work an injustice upon the other party due to the latter's justifiable reliance upon the former's words or conduct." *Marvel Characters, Inc. v. Simon,* 310 F.3d 280, 292 (2d Cir.2002) (citation omitted).

Essential to any finding of estoppel is "detrimental reliance on the adverse party's misrepresentations." *Republic of Ecuador v. Chevron Corp.,* 638 F.3d 384, 400 (2d Cir.2011). Reliance is not justifiable if the party invoking estoppel "had the means by which with reasonable diligence he could acquire the knowledge so that it would be negligence on his part to remain ignorant by not using those means." *In re Becker,* 407 F.3d 89, 99 (2d Cir.2005) (citation omitted) (Emphasis omitted.) *See Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 565 (S.D.N.Y. 2013). Here, Defendant has failed to present any evidence to support the elements of an estoppel claim.

First, Plaintiff did not learn of the infringement until on or about February 9, 2018. [56.1, ¶¶ 20-21] Accordingly, Defendant's estoppel defense must be based on alleged representations that were made by Plaintiff at some point after February 8, 2018. But Plaintiff did not make any

representations to Defendant at any time after the infringement was discovered. [56.1, ¶ 16]  For that reason alone, the estoppel defense fails.

Second, there is no evidence that Plaintiff either (a) intended that Defendant rely on Plaintiff's alleged acts or omissions suggesting authorization; or (b) acted or failed to act in such a manner that Defendant had a right to believe it was intended to rely on Plaintiff's conduct.

Third, Defendant cannot plausibly claim ignorance of the facts underlying the infringement.

Fourth, there is no evidence to support Defendant's claim that it relied on any representations made by Plaintiffs *at any time*.  Once again, there were no communications between Plaintiff and Defendant prior to the discovery of the infringement, and no representations made at anytime thereafter.  [56.1, ¶ 16]  Thus, Defendant could not have possibly relied on any representations made by Plaintiff.  Accordingly, the estoppel defense fails.

## C.   DEFENDANT CANNOT ESTABLISH ACQUIESCENCE

"There is some minimal support in caselaw for the recognition of an estoppel by acquiescence defense in copyright infringement actions." *Tolliver v. McCants*, 684 F. Supp. 2d 343, 347 (S.D.N.Y. 2010), *aff'd*, 486 F. App'x 902 (2d Cir. 2012) (citing *Basic Books, Inc. v. Kinko's Graphics Corp.,* 758 F.Supp. 1522, 1539–40 (S.D.N.Y.1991) ("'The plaintiff's acquiescence in the defendant's infringing acts may, if continued for a sufficient period of time and if manifested by overt acts, result in an abandonment of copyright.' In such a case, the estoppel 'destroys the right asserted' and will be a defense for all acts occurring after the acquiescence.") (*quoting* 4 NIMMER ON COPYRIGHT § 13.07).

However, there is no evidence that Plaintiff ever engaged in an overt act that could be deemed acquiescence to Defendant's infringement.  Indeed, there was never any communication

between Plaintiff and Defendant prior to discovery of the infringement; nor did Plaintiff make any representations to Defendant at any time thereafter.  [56.1, ¶ 16]  Accordingly, this affirmative defense fails as a matter of law.

**POINT V:    THE DEFENSE OF "BAD FAITH" BASED ON PRE-FILING SETTLEMENT NEGOTIATIONS FAILS AS A MATTER OF LAW**

Defendant's fifth affirmative defense alleges that "Plaintiff's claim is barred by his bad faith, in that Bonnier attempted to pay him a reasonable license fee prior to his filing of the Complaint, but Plaintiff (or his counsel) refused to accept a reasonable payment." [Amended Answer, Dkt. # 19, Fifth Affirmative Defense]

Defendant's claim of "bad faith" should be properly construed as an equitable defense of unclean hands.  Under New York law, the doctrine of unclean hands is "never used unless the plaintiff is guilty of immoral, unconscionable conduct and even then only when the conduct relied on is directly related to the subject matter in litigation and the party seeking to invoke the doctrine was injured by such conduct."  *MBIA Ins. Corp. v. Patriarch Partners VIII, LLC*, 842 F.Supp.2d 682, 713 (S.D.N.Y. 2012) (citations omitted).  Defendant bears the burden of proving its affirmative defense of unclean hands. *Gidatex, S.r.L. v. Campaniello Imports, Ltd.,* 82 F.Supp.2d 126, 130 (S.D.N.Y. 1999).

Here, there is no evidence on the record that Defendant relied on any allegedly immoral conduct or that Defendant was injured by such conduct.  Defendant is simply upset that Plaintiff did not accept Defendant's pre-filing settlement offer for what Defendant estimates was the fair market value to license the Photograph.  Defendant misapprehends the purpose of statutory damages under the Copyright Act.

In order "to put infringers 'on notice that it costs less to obey the copyright laws than to violate them,' . . . a statutory damage award should significantly exceed the amount of unpaid license fees." *Broadcast Music, Inc., v. R Bar of Manhattan, Inc.*, 919 F.Supp. 656, 660 (S.D.N.Y. 1996). "A statutory damages award under the Copyright Act is by definition an authorized civil penalty." *Capital Records, Inc. v. MP3tunes, LLC*, 48 F.Supp.3d 703, 732 (S.D.N.Y. 2014). "[A]n award of statutory damages may serve purposes traditionally associated with legal relief, such as compensation and punishment." *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340, 352 (1998); *see also Lauratex Textile Corp. v. Allton Knitting Mills, Inc.,* 519 F.Supp. 730, 733 (S.D.N.Y.1981) (explaining that statutory damages may be used to "provide a deterrent for would-be infringers"); *Stevens v. Aeonian Press, Inc.*, No. 00 Civ. 6330(JSM), 2002 WL 31387224 at *1 (S.D.N.Y. Oct. 23, 2002) ("[S]tatutory damages are not meant to be merely compensatory or restitutionary . . . . The statutory award is also meant 'to discourage wrongful conduct."). Indeed, the Court need not assess Plaintiff's loss of revenues or Defendant's profits to calculate a substantial statutory damages award. *See Entral Group Int'l LLC v. Honey Cafe on 5th, Inc.,* 2006 WL 3694584, at *6 (E.D.N.Y. Dec. 14, 2006) (awarding $150,000 for defendants' willful infringement although neither the plaintiff's losses nor the defendants' profits were established).

Accordingly, because Plaintiff was under no legal duty to accept a lost licensing fee in order to settle his statutory damages claim against Defendant, the defense of unclean hands or "bad faith" is legally incognizable.

## POINT VI:    THE DEFENSE OF "FAILURE TO STATE A CLAIM FOR WILLFUL INFRINGEMENT" IS NOT A DEFENSE TO LIABILITY

Defendant's third affirmative defense alleges that "Plaintiff failed to state a claim for willful infringement." [Amended Answer, Dkt. # 19, Fifth Affirmative Defense].

"Copyright infringement is a strict liability offense in the sense that a plaintiff is not required to prove unlawful intent or culpability." *EMI Christian Music Group, Inc. v. MP3tunes, LLC*, 844 F.3d 79, 89 (2d Cir. 2016) (citing *Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 130 (2d Cir. 2008); *see also Fitzgerald Publ'g. Co. v. Baylor Publ'g Co.*, 807 F.2d 1110, 1113 (2d Cir.1986) ("intent or knowledge is not an element of infringement.")

Accordingly, because Plaintiff's claim of willfulness is related to damages (rather than liability), the Defendant's third affirmative defense is not relevant to the present motion which seeks the Court's ruling as to liability.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for partial summary judgment on liability against Defendant Bonnier Corporation for copyright infringement should be GRANTED.

Respectfully Submitted,

LIEBOWITZ LAW FIRM, PLLC

by: **/richardpliebowitz/___**
Richard P. Liebowitz
11 Sunrise Plaza, Suite 305
Valley Stream, NY 11580
(516) 233-1660
rl@liebowtizlawfirm.com

*Counsel for Plaintiff Pierre-Yves Chicoineau*