UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

PIERRE YVES CHICOINEAU,

    Plaintiff,

v.

BONNIER CORPORATION,

    Defendant.

Docket No.: 1:18-cv-3264

## DEFENDANT BONNIER CORPORATION'S RESPONSE TO PLAINTIFF'S STATEMENT PURSUANT TO LOCAL RULE 56.1

Defendant Bonnier Corporation ("Bonnier"), by and through the undersigned counsel and pursuant to Rule 56.1 of the Local Rules of the United States District Court for the Southern District of New York, files this Response to Plaintiff Pierre Yves Chicoineau's (the "plaintiff") Statement Pursuant to Local Rule 56.1 ("Plaintiff's Rule 56.1 Statement"). In support of this response, Bonnier states as follows:

**Plaintiff Pierre Yves Chicoineau**

1.    Bonnier disputes that the plaintiff is a professional photographer. The plaintiff's deposition contradicts this assertion, and the plaintiff has not provided evidence in support. In the plaintiff's deposition, he states that he is retired, has a consulting business, and does photography as an activity. (Deposition of Pierre Yves Chicoineau ("Chicoineau Dep.") at 6:9–7:5). The plaintiff also testified that, while photography is a "passion" of his, the plaintiff makes a living from his other job as an engineering consultant and has not been spending time selling his photography. (*Id.* at 8:14–9:4). In addition, the plaintiff was busy working "90 or 100 hours a

week" up until his retirement. (*Id.* at 38:21–39:1). According to the plaintiff, if he was only a photography artist, he would be "starving" all of his life. (*Id.* at 66:8–12).

2.  Bonnier disputes that the plaintiff has been licensing its photographs for 15 years. The plaintiff has licensed some photographs, but has been largely unsuccessful. (*Id.* at 14:6 – 10, 25:7–9, 27:13–21).

## Defendant Bonnier Corporation

3.  Bonnier does not dispute that it is a for-profit media company. It disputes that it has over 1,000 employees or makes $350 million in annual revenue. (Affidavit of Jeremy Thompson ("Bonnier Aff.") at ¶ 2).

4.  Bonnier does not dispute that it owns and operates the website www.DestinationWeddingMag.com (the "Website").

## The Photograph of the Eiffel Tower – November 27, 2002

5.  Bonnier does not dispute that the plaintiff took a photograph of the Eiffel Tower on November 23, 2002 as part of a series of snapshots on his vacation to Italy. Bonnier disputes that the plaintiff selected the angle of shot, light and shade, exposure, and effects achieved by means of filters. The plaintiff testified that there is nothing unique about his Photograph of the Eiffel Tower except for two lights on the Eiffel Tower itself and the location of people and clouds. (*See* Chicoineau Dep. at 18:6–8; 27). In fact, when comparing a more recent photograph of the Eiffel Tower that the plaintiff took in 2012 or 2013 with this Photograph taken back in 2002, the plaintiff testified that his earlier photographs, which include the Photograph at issue, are "pure photograph," but the more recent photographs taken in 2012 and later include editing and artistic effects. (*Id.* at 63–65). The Photograph at issue, the plaintiff testified, is merely a snapshot. (*Id.*) Moreover, when presented with a number of photographs of the Eiffel Tower at

nighttime, the plaintiff has difficulty distinguishing his Photograph of the Eiffel Tower from other photographs for sale on Shutterstock.com, which were presented to the plaintiff during his deposition. (*Id.* at 73:3–8, Ex. 19; 73:14–74:2, Ex. 20). The plaintiff expressly recognized that his Photograph is "very similar" to the other photographs of the Eiffel Tower at night. (*Id.*)

6. The plaintiff also licenses his images to "iStock.com" and "123rf.com." (*Id.* at 25:10–22).

7. Bonnier disputes that the plaintiff has a valid registered copyright for the Photograph. The plaintiff has neither attached to its motion for partial summary judgment a valid copyright certificate for the Photograph nor provided same to Bonnier. (Bonnier Aff. at ¶ 4).

8. Bonnier does not dispute that the plaintiff deposited some photographs with the U.S. Copyright Office as part of a copyright registration. The plaintiff, however, has not shown admissible evidence demonstrating that the Photograph at issue was provided to the Copyright Office – the plaintiff has not provided Bonnier with a valid copyright certificate. The plaintiff has only provided a screenshot of a registration search on the Copyright Office website. (*Id.* ¶ 5).

9. Bonnier does not dispute that it published the article entitled *Top 5 Romantic Spots to Steal a Kiss in Paris* ("Bonnier Article") on the Website.

10. Bonnier does not dispute that it displayed the Photograph of the Eiffel Tower on the Website.

11. Bonnier does not dispute that commercial advertisements are visible on the Bonnier Article. Bonnier disputes that these advertisements are where the Photograph is prominently displayed because the Photograph has been removed. (*Id.* ¶ 8).

12. Bonnier does not dispute that it did not credit the plaintiff as the author of the Photograph. Bonnier did, however, credit the "Eiffel Tower," and the Photograph at issue was

also on display on the Eiffel Tower's website and the Eiffel Tower's restaurant's website. (Chicoineau Dep. at 46–47).

13. Bonnier does not dispute that it did not seek the plaintiff's permission to publish the Photograph because Bonnier was unaware that the plaintiff asserted ownership of the image.

14. Bonnier does not dispute that it did not have a license to display the Photograph on the Website.

15. Bonnier does not dispute that the plaintiff never granted Bonnier authorization to copy the Photograph or distribute copies of the plaintiff's registered work to the public.

16. Bonnier does not dispute that there was no communication between the plaintiff and Bonnier before the alleged infringement was discovered. Bonnier does not dispute that the plaintiff never made representations to Bonnier.

17. Bonnier disputes that the alleged unauthorized use of the Photograph occurred subsequent to the effective date of the registration because the plaintiff has not provided a copy of its registration. (Bonnier Aff. at ¶¶ 4–5).

**Plaintiff's Discovery of the Infringement – February 8, 2018**

18. Bonnier does not dispute that it is the routine practice of Liebowitz Law Firm to search the internet to locate infringing content.

19. Bonnier does not dispute the date that the plaintiff became a client of Liebowitz Law Firm.

20. Bonnier disputes the plaintiff's allegation that Liebowitz Law Firm discovered the Bonnier Article as part of its routine practice. The plaintiff testified that he discovered the infringement himself following his reading an article regarding the prevalence of infringement. (Chicoineau Dep. at 11:10–20). The plaintiff testified that he decided to run a search with the

4

photographs that he had licensed to Bigstock.com, and that the Photograph at issue in this case was the first one that the plaintiff found in during his search. (*Id.*)

21. Bonnier disputes that the plaintiff had no reason to know that Bonnier had published the Photograph prior to the Liebowitz Law Firm's discovery of the Photograph. The plaintiff testified that he discovered the Photograph, not the Liebowitz Law Firm. (*Id.* at 11:10–20).

**Bonnier's Additional Material Facts In Dispute**

22. Bigstock.com licensed the Photograph one hundred times between 2003 and 2018 (*Id.* at 27:13–21).

23. Any individual could have downloaded the plaintiff's Photograph on Bigstock.com for anywhere between $0.50 and a few dollars. (*Id.* at 11, 24:10–25:1).

24. The plaintiff has sold few photographs since 2002 when he took the Photograph. In fact, the plaintiff has made very little through his use of stock photograph websites such as Bigstock.com, and no individual has ever requested a downloadable file of the plaintiff's images on his website (*Id.* at 11). From 2003 through 2017, the plaintiff made only $700 through Bigstock.com's licensing of his various images. (*Id.* at 39:1–13). The plaintiff makes approximately $0.50 to a few dollars for each sale (license) of the Photograph on Bigstock.com, and the plaintiff has only licensed this Photograph one hundred times in the past fifteen years. (*Id.* at 11). During the last three to four years, the plaintiff has only made about a dozen sales of his photography from his own website. (*Id.* at 41:5–12). In addition, the plaintiff has listed for sale on his website similar photographs of the Eiffel Tower with the two beams of light for $300. (*Id.* at 60:1–24, Ex. 13; 62–63, Ex. 14). The plaintiff, however, testified that he has not made any sales of these Eiffel Tower photographs. (*Id.* at 60:2–7, Ex. 12).

25. The plaintiff took a series of photographs that he asserts were taken around the same time as the Photograph at issue. These photographs clearly reflect that the plaintiff was snapping "pure picture" photographs of his vacation to Paris with his wife, and that the plaintiff did not select the angle of shot, light and shade, exposure, and effects achieved by means of filters. (Affidavit of Michael D. Crosbie, Esq. ("Crosbie Aff.") at ¶¶ 2–4), Composite Exhibit A).

26. Bonnier has a long-standing policy of verifying the right to use intellectual property, including photographs. Bonnier, as a media company, respects the work of others. (Bonnier Aff. at ¶ 6).

27. Bonnier employed an intern, Sarah Larson. Sarah Larson posted the Photograph on the Article on the Website. From the credit link associated with the Photograph, it appears that the intern downloaded the Photograph from the Eiffel Tower's official website. The intern credited the Eiffel Tower website as the source of the image. The plaintiff's testimony corroborates this, because he too saw the Photograph on the Eiffel Tower's website. (*Id.* at ¶ 7).

28. Bonnier has not acted willfully. Bonnier removed the Photograph immediately upon receiving demand from the plaintiff that he believed it was his Photograph. (*Id.* at ¶ 8).

29. The plaintiff's counsel has a well-documented history of making unreasonable demands on accused infringers. One such example is an article published on Slate.com entitled *Why Every Media Company Fears Richard Liebowitz*. Bonnier, a media company, has also been targeted by Mr. Liebowitz's practices. (Bonnier Aff., ¶ at 10, Ex. A).

30. On multiple occasions, Michael D. Crosbie, Esq., attorney for Bonnier, has requested that the plaintiff provide the documents related to a reverse search of the plaintiff's photographs that plaintiff conducted in January 2018, but the plaintiff has refused to provide the documents. (Crosbie Aff. ¶ 5).

Dated: September 21, 2018

/s/ Michael D. Crosbie
**MICHAEL D. CROSBIE, ESQ.**
Florida Bar No. 72575
Email: mcrosbie@shutts.com
**MAUREEN K. ROGERS, ESQ.**
Florida Bar No. 0119226
Email: mrogers@shutts.com
SHUTTS & BOWEN LLP
300 S. Orange Avenue, Suite 1600
Orlando, Florida 32801
Telephone: 407-835-6796
Facsimile: 407-849-7275

/s/ Thomas E. Butler
**THOMAS E. BUTLER, ESQ. (local counsel)**
(2483261)
White and Williams, LLP
7 Times Square, Suite 2900
New York, New York 10036
Telephone: 212-714-3070
Facsimile: 212-631-4431
Email: butlert@whiteandwilliams.com
*Attorneys for Bonnier Corporation*

## CERTIFICATE OF SERVICE

I certify that on September 21, 2018, I electronically filed the foregoing with the Clerk of the Court which will send a notice of electronic filing to all counsel of record.

/s/ Michael D. Crosbie
Michael D. Crosbie, Esq.

ORLDOCS 16377183 1